**CITY OF COLUMBUS, Appellee,**

v.

**COPP, Appellant.**

[Cite as *Columbus v. Copp.* (1990), 64 Ohio App.3d 493.]

Court of Appeals of Ohio,
Franklin County.

Nos. 89AP–1051, 89AP–1052 and 89AP–1053.

Decided Feb. 13, 1990.

494

Ronald J. O'Brien, City Attorney, James J. Fais, City Prosecutor, and Thomas K. Lindsey, for appellee.

Harry R. Rinehart, for appellant.

WHITESIDE, Judge.

Defendant, John Douglas Copp, appeals from a judgment of the Franklin County Municipal Court and raises a single assignment of error as follows:

"The trial court erred when it overruled the defendant's motion to suppress the evidence seized from his bedroom pursuant to a warrantless search of the boarding house."

Defendant entered a no contest plea to reduced charges of disorderly conduct and possession of fireworks following the overruling by the trial court of defendant's motion to suppress evidence, consisting of the fireworks, seized as a result of a warrantless search of defendant's bedroom in a residence which he shared with three other persons. The city concedes that defendant did not consent to a police officer's entry or search of his bedroom. However, the city contends, and the trial court found, that consent was given by a co-tenant of the residence (who did not share the bedroom), and that this somehow was sufficient consent to permit the officer to enter defendant's bedroom, search it, and seize the fireworks found. The trial court specifically held that the consent given by the person who shared the house to search his own separate bedroom somehow operated as a consent to search the entire house, stating expressly that the co-tenant " * * * has authority to consent to the search of the entire place."

The trial court apparently found that when the co-tenant "asked in" the police officer, this constituted consent to search the house and that the express testimony of the co-tenant that he later consented to a search of his own bedroom somehow should be expanded. Upon this issue, the only evidence as to what the co-tenant said to the police officer with respect to searching the co-tenant's room was the testimony of the co-tenant. If the trial court did not believe that testimony (as the oral opinion suggests), there is no evidence remaining upon which to base a finding, except the testimony of the police officer. The testimony of the police officer is essentially as follows:

"I knocked on the door. And another subject that stated he lived there opened the door. And I told him I was here on a fireworks complaint. And

when he opened the door, the whole house was filled with smoke, and a strong odor of gun powder was also in the house.

"And he did ask us in. And I told him we were here on a fireworks complaint, and I was going to confiscate the fireworks, and we weren't coming back here on anymore fireworks complaints.

"I said, 'We can do it easy and confiscate the fireworks and leave, or you can be uncooperative.' And I wanted to go to the window. So they took me upstairs to the upstairs bedroom, at which time we saw all the fireworks sitting on the floor."

In response to a leading question, the police stated that the co-tenant "voluntarily" took him upstairs. The police officer admitted that after he was in the defendant's bedroom, defendant appeared, advised him that it was defendant's private bedroom and asked him to leave, which the police officer obviously refused to do. On cross-examination, the police officer repeated his testimony that after he knocked on the door and was asked to come in, " * * * I told him that I was going to confiscate the fireworks." He expanded upon this statement stating:

"And I told him, I said, you know, 'I don't care how you do it.' I said, you know, 'You can be cooperative, and I'll just confiscate them and that will be the end of it and we won't have anymore problems. Or, if you don't want to cooperate, we can charge people. I don't care.' "

In short, the officer testified that he was in uniform, knocked on the door, announced himself as a police officer, was asked in, and then announced that he was going to confiscate the fireworks one way or another either with "cooperation" or after charging an offense.

It is somewhat difficult to comport the officer's testimony with voluntary action even by the co-tenant. A police officer in uniform appeared at the door, and when he was asked to come in, announced that he was there to confiscate fireworks and if the person who answered the door did not "cooperate," the officer would "charge" someone. By the officer's own testimony, it is quite apparent that the co-tenant was advised that he would be arrested unless he permitted the police officer to search the house.

Additionally, according to the police officer, he went directly to defendant's bedroom, since he did not mention first searching the co-tenant's bedroom as testified to by the co-tenant.

The co-tenant testified that when the officer (accompanied by another officer) appeared at the door, he did ask him to come inside and that the officer then asked to see some identification. The co-tenant went upstairs to get his identification, and the two police officers followed him up to his

bedroom. One officer started searching the adjacent family room and the other announced that he was not going to arrest anyone but he was going to confiscate the fireworks and be on his way. The officer then went into the co-tenant's bedroom and announced that he was going to search the place, at which time the co-tenant responded that the officer could search " ' * * * in there all you want.' * * * " The officers then asked what was upstairs on the third floor, and the co-tenant replied two bedrooms, at which time the officer announced that he was " ' * * * going to have to search up there too.' " According to the co-tenant, the officer also stated, " ' * * * I don't need a warrant because I saw you shooting them off the roof.' * * * " It was at this point that the officer went into defendant's bedroom, searched it, and found the fireworks which he confiscated. At this juncture, defendant appeared and told the police officer that it was his bedroom and he had not consented to a search and asked the officer to leave. The second police officer did not testify.

The parties have variously described the premises as a boarding house or rooming house. The record does not reflect that it is either but, instead, is a shared house—that is, a house rented by and shared by four people each of whom has his own separate individual bedroom. A rooming house is one in which the owner or occupant rents sleeping rooms to others. A boarding house is like a rooming house except that both room and board (serving meals) are included.

■ There was no evidence that any co-tenant had any right of possession or control of the separate bedroom of another co-tenant. The city contends (and the trial court apparently found) that such right exists as a matter of law by the very nature of being co-tenants of a residence. Although it is true that one of two persons who is in joint possession of a premises may consent to a search of such premises, ordinarily one co-tenant's separate personal bedroom is not deemed to be in the joint possession of other co-tenants in a home shared by unrelated persons. There are some instances where the familial relationship between the parties (such as parent and child) gives rise to an inference of joint possession even of the separate bedroom of the child, but such an inference cannot properly be drawn in the case of unrelated adults.

■ Here, there was no evidence to suggest that the police officer had grounds for believing that the resident who admitted the officer was in control of the premises. Rather, the officer admitted that he did not check as to whose room he was entering but " * * * just asked to go to the window, you know, that I had seen the fireworks coming from. * * * " The officer referred to the other resident as " * * * another subject that lived in the

residence also." The evidence as to the relationship between the residents came only from testimony of the other resident and defendant himself.

The evidence as to such relationship, however, does not suggest that the person who "admitted" the police into the residence was in control of the entire residence. Rather, there were common areas and bedroom areas according to his testimony with each resident having his own private bedroom.

■ There are at least four important considerations involved. First, the burden is upon the state to prove that consent was given for the search by a person having authority to consent. Second, the consent need not be given by the defendant but may be obtained from a third person who possesses common authority over the premises or effects sought to be searched. Third, common authority cannot be implied merely from the existence of a property interest in such third party but, rather, rests on mutual use of the property by a person generally having joint access or control of the place searched for most purposes. Fourth, the authority of a third person to consent is limited to common areas over which co-inhabitants have joint access or control for most purposes. See *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. See, also, Annotation, Evidence—Search Authorized by Relative (1981), 4 A.L.R.4th 196; and Annotation, Evidence—Search Authorized by Cotenant (1981), 4 A.L.R.4th 1050.

■ The upshot of the matter appears to be that a co-tenant may consent to the search of a premises (even including a bedroom) so long as the premises being searched are jointly occupied or jointly controlled by both co-tenants. However, in the absence of special circumstances, a co-tenant may not consent to the search of the private bedroom of another co-tenant which is neither jointly occupied nor jointly controlled. Clearly, a tenant in a boarding house or rooming house has a reasonable expectation of privacy in his own private sleeping quarters not shared with a co-tenant. The situation is slightly different in the case of a shared home such as is apparently involved here. Although the police officer testified to the effect that he had no knowledge of the authority, if any, of the co-tenant with respect to the premises, other than that he "lived there," the testimony presented by defendant indicated that it was, in fact, a shared home. However, the evidence also indicates that the bedroom in question was defendant's own private bedroom with no suggestion that the co-tenant had a general right of access to, or control of, defendant's private bedroom.

■ As indicated above, the mere fact that the officer was "asked in" when he appeared at the door, and that he was not told to stop his search when he announced that he was going to do so, nor asked for a warrant, does not *ipso*

*facto* indicate that the officer was in a place where he had a right to be. This is especially true where, as here, the officer testified that he informed the co-tenant who answered the door that he, the officer, was going to confiscate the fireworks and would arrest the co-tenant if he interfered. In short, there is no evidence justifying a finding of a valid consent to search by the co-tenant of defendant's private bedroom. Accordingly, the assignment of error is well taken.

For the foregoing reasons, the assignment of error is sustained, and the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and MARTIN, JJ., concur.

WILLIAM J. MARTIN, J., of the Carroll County Common Pleas Court, sitting by assignment.