OPINION
{¶ 1} Defendant-appellant, Scott A. Copley, appeals from a judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of murder with a firearm specification, in violation of R.C.2903.02, and tampering with evidence, in violation of R.C. 2921.12.
 {¶ 2} The Franklin County Grand Jury indicted appellant on the above charges on September 12, 2003. The charges stem from Jennifer Duncan's death on August 29, 2002. Appellant pled not guilty to the charges and filed a motion to suppress a notepad containing lyrics that law enforcement obtained while searching appellant's apartment on September 5, 2003. Although law enforcement had no warrant to search appellant's residence, appellant's co-tenant, Tosha Worrell, consented to the search. Appellant testified that he wrote the lyrics and that approximately the first ten pages pertain to Duncan's death. The lyrics state, in part:
* * * Shot 3 times but I wasn't caught fallin', I did what I had to 
made sure that bitch was threw [sic] * * * I blew off her dome[.] * * * Better her than me cuz I wasn't havin' it. * * * [I]t wasn't hard to make sure your daughter was flipped[.] * * * I sware [sic] to God I ain't sorry * * * God gave her 3 chances she blew her fuckin' mission, Satan gave me 1 I made sure [her] brains was missin'[.] * * * I drew a bullet odds were with me all she could do was stare[.] * * * [B]efore I showed my hand I made sure she was there, she knew the game was over all I seen was the tears, folded her hand closed her eyes she was no longer there. * * *
(State's Ex. 23.) The trial court denied the motion to suppress after the hearing.
 {¶ 3} At trial, plaintiff-appellee, the State of Ohio, established that appellant and Duncan were in a one-car accident on Interstate 270 after midnight on August 29, 2002. After the accident, they exited the car, and Duncan shot at appellant with a firearm. Subsequently, appellant retrieved the weapon and fatally shot Duncan.
 {¶ 4} At trial, Ronald Walker testified that he was traveling on Interstate 270 with his wife, Raphaella Walker, when he witnessed the accident. Walker exited his automobile to assist Duncan and appellant. While outside, Walker saw Duncan holding a firearm. As Walker was getting back into his automobile, he heard two shots. He then turned and saw appellant straddle Duncan and heard another two shots. Previously, Walker told law enforcement that he heard a total of three shots, not four.
 {¶ 5} Raphaella Walker testified that she saw Duncan shooting the firearm. Raphaella Walker then saw appellant stand over Duncan with the firearm, firing two shots.
 {¶ 6} Renee Medler testified that she saw appellant standing to Duncan's right while Duncan lay on the ground. Medler saw appellant holding a firearm and heard one shot.
 {¶ 7} Gene Jenson testified that appellant "had a woman by the hair of the head" with the "head held about waist high." (Tr. 147.) Jenson heard a shot and then saw appellant drop the woman's head. Jenson claimed that Duncan's wound would have been on her right side.
 {¶ 8} Ronald and Raphael Walker, Renee Medler, and Gene Jenson did not see Duncan fighting or struggling as appellant stood over her with the firearm. Medler claimed that Duncan appeared scared.
 {¶ 9} Medic Joshua Ruetsch responded to the scene and saw Duncan lying on her back, bleeding from the head. Ruestch and the other responding medics took Duncan to the hospital where medical staff pronounced her dead.
 {¶ 10} Deputy Coroner Dr. Patrick Fardal testified that Duncan died from a gunshot wound to the head just above the left ear. The bullet took a horizontal course through Duncan's skull and lodged into her brain.
 {¶ 11} Damian Weatherspoon testified for appellant. Weatherspoon testified that, on August 29, 2002, appellant called him from a gas station and asked for a ride, indicating that he had been shot. Weatherspoon ultimately took appellant to the hospital after seeing a bullet wound to appellant's penis.
 {¶ 12} Appellant testified at trial. He admitted to previous felony convictions for possession of drugs, aggravated assault, and burglary. He also testified about events leading up to Duncan's death. According to appellant, he and Duncan went to a drive-in movie the evening of August 28, 2002. Appellant noted that they left the drive-in after they began arguing. Appellant also claimed that, while he and Duncan were standing on the freeway after the accident, Duncan pointed a firearm at him and threatened to kill him. Duncan shot appellant, and he felt a pain in his stomach. A struggle ensued, and Duncan fell to the ground, face down. According to appellant, Duncan then started to lift herself up while yelling that she would kill him. Appellant had grabbed the firearm and shot Duncan because he was scared and thought she was trying to kill him. Appellant indicated that he knew Duncan no longer had a firearm when he shot her. Appellant also testified that he did not act out of rage. He expressed feeling overpowered by Duncan and stated that Duncan's death "was the last thing I wanted" and that "I would have rather died than hurt her." (Tr. 330.) Lastly, appellant testified that he dropped the firearm on the ground near a fence on his way to a nearby gas station. Law enforcement never recovered the firearm.
 {¶ 13} The jury found appellant guilty as charged, and the trial court sentenced him accordingly. Appellant appeals, raising five assignments of error:
I. The trial court erred when it failed to grant appellant's motion to suppress evidence thereby violating his right to a fair trial and right against unreasonable search and seizure under the Ohio and Federal Constitutions.
II. The trial court erred when it permitted the state to introduce irrelevant and highly prejudicial evidence thereby violating appellant's right to a fair trial.
III. The trial court erred in failing to instruct on the lesser or inferior degree offense of voluntary manslaughter thereby denying appellant's right to a fair trial.
IV. Multiple instances of deficient performance in the conduct of the trial coupled with prejudice inuring to the detriment of the appellant result in the denial of the right to a fair trial and the right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.
V. The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 14} In his first assignment of error, appellant contends that law enforcement obtained the notepad with lyrics from his bedroom pursuant to an unconstitutional warrantless search. Thus, appellant argues that the trial court erred by denying his motion to suppress the lyrics. We disagree.
 {¶ 15} We recognize that neither appellant nor appellee indicated during the suppression hearing that law enforcement obtained the lyrics from appellant's bedroom; however, appellant stated in his motion to suppress that law enforcement found the lyrics in his bedroom. The defendant "must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search" when raising a motion to suppress. Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218. Appellant satisfied this requirement in Xenia by specifying in the motion itself that law enforcement found the lyrics in his bedroom, and we may review the issue accordingly.
 {¶ 16} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact."State v. Featherstone, 150 Ohio App.3d 24, 2002-Ohio-6028, at ¶ 10. We review a trial court's findings of fact "for clear error" and give weight to the trial court's inferences drawn from those facts. Id., quotingOrnelas v. United States (1996), 517 U.S. 690, 699. However, we determine independently whether the trial court properly applied the substantive law to the facts. Featherstone, at ¶ 10.
 {¶ 17} As an initial matter, appellee asserts that appellant lacks standing to challenge the warrantless search because he did not lawfully reside at the apartment after Worrell, his co-tenant, decided that he should vacate. We disagree.
 {¶ 18} An individual with a "legitimate expectation of privacy in the invaded place" has standing to challenge a warrantless search under theFourth Amendment. Rakas v. Illinois (1978), 439 U.S. 128, 143; Minnesotav. Carter (1998), 525 U.S. 83, 88. An individual has a "legitimate expectation of privacy" and, therefore, standing to challenge law enforcement's warrantless search on property that the individual lawfully possesses. Rakas, at 143, fn.12.
 {¶ 19} In challenging appellant's standing, appellee relies on Statev. Coleman (1997), 118 Ohio App.3d 522. In Coleman, the Eighth District Court of Appeals held that a defendant lacked standing to challenge law enforcement's warrantless search of a hotel room. Id. at 526-527. According to the court, the defendant had no "legitimate expectation of privacy" in the hotel room because he was merely visiting a hotel occupant at the time of the search. Id. at 525. The court further reasoned that the defendant had not spent the night and that the defendant was not "legitimately on the premises" because the occupant's period of tenancy expired. Id. at 526. Thus, the court concluded that the defendant lacked a "legitimate possessory interest sufficient to confer standing." Id. at 527, quoting United States v. Conway (D.Kan. 1994), 854 F.Supp. 834,838.
 {¶ 20} Here, unlike Coleman, appellant paid rent to reside at the apartment and kept his bed and clothes in a room at the residence. Although Worrell eventually wanted appellant to vacate, she did not follow through on the matter. Nothing in the record demonstrates that Worrell pursued eviction proceedings to terminate the tenancy pursuant to landlord-tenant law in R.C. Chapters 1923 and 5321. Likewise, Worrell never sought law enforcement's assistance, as advised by apartment management. Thus, appellant continued to have rightful possession of the apartment during the time that law enforcement searched the property. Therefore, appellant has a "legitimate expectation of privacy" in the apartment and standing to challenge the warrantless search.
 {¶ 21} The Fourth Amendment to the United States Constitution prohibits law enforcement from making unreasonable searches and seizures.State v. Kinney (1998), 83 Ohio St.3d 85, 87. Section 14, Article I of the Ohio Constitution is identical and coextensive with theFourth Amendment. Id. Warrantless searches are unreasonable, "subject only to a few specifically established and well delineated exceptions." Xenia, at 218. Accordingly, evidence obtained from a warrantless search is subject to exclusion, unless circumstances of the search establish it as constitutionally reasonable. See Xenia, at 219; Wong Sun v.United States (1963), 371 U.S. 471, 487-488. The state bears the burden to demonstrate that law enforcement constitutionally executed the warrantless search. Xenia, at 218.
 {¶ 22} Courts deem warrantless searches constitutional when law enforcement obtains valid consent. Schneckloth v. Bustamonte (1973),412 U.S. 218, 219. Here, appellant's co-tenant, Worrell, consented to the warrantless search. A co-tenant has authority to consent to a warrantless search if the co-tenant has "mutual use of the property" by means of "joint access or control for most purposes." United States v. Matlock
(1974), 415 U.S. 164, 171, fn.7. Appellant argues that Worrell lacked authority to consent to law enforcement searching his bedroom.
 {¶ 23} In support, appellant relies on Columbus v. Copp
(1990), 64 Ohio App.3d 493. In Copp, we held that "a co-tenant may not consent to the search of the private bedroom of another co-tenant which is neither jointly occupied nor jointly controlled." Id. at 498. Thus, we concluded that a co-tenant lacked authority to consent to a warrantless search of a defendant's private bedroom because the co-tenant had no access to the room. Id. at 498-499.
 {¶ 24} Here, unlike Copp, appellant gave Worrell access to his bedroom to get items such as laundry or a brush. According to Worrell, "anything I needed I got out of there." (Supp. Hearing Tr. 8.) Similarly, appellant never denied Worrell access to the room. Indeed, "everyone in the house was able to go in every room." (Supp. Hearing Tr. 19.) Although Worrell had stopped sleeping at the apartment when she consented to the warrantless search, she "never really moved out." (Supp. Hearing Tr. 16.) Worrell continued to pay utilities and keep her clothes at the apartment. Worrell went to the apartment every day and maintained access to all rooms in the apartment, including appellant's bedroom.
 {¶ 25} Appellant's case is similar to United States v. Kelley (C.A.9, 1992), 953 F.2d 562, disapproved on other grounds, United States v. Kim
(C.A.9, 1997), 105 F.3d 1579, 1581. In Kelley, a co-tenant consented to law enforcement searching the defendant's bedroom without a warrant. Id. at 564. The co-tenant had access to the defendant's bedroom to use the telephone. Id. at 566. The Ninth Circuit Court of Appeals concluded that such access gave the co-tenant authority to consent to the warrantless search. Id.
 {¶ 26} Worrell had more access to appellant's bedroom than the co-tenant in Kelley. Consequently, Worrell's access to appellant's bedroom rises above the "mutual use" threshold in Matlock and authorized her to consent to law enforcement searching appellant's bedroom. Thus, law enforcement did not unconstitutionally obtain appellant's lyrics, and the trial court did not err by denying appellant's motion to suppress. Therefore, we overrule appellant's first assignment of error.
 {¶ 27} In his second assignment of error, appellant argues that the lyrics are inadmissible and that the trial court erred by admitting them into evidence. We disagree.
 {¶ 28} We review a trial court's admission or exclusion of evidence under an abuse of discretion standard. State v. Jells (1990),53 Ohio St.3d 22, 30. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 29} As noted above, appellant indicated that approximately the first ten pages of the lyrics pertain to Duncan's death. However, appellant's trial counsel requested that the trial court admit the entire notepad of lyrics after the trial court overruled objections to the lyrics' admissibility. Because appellant does not challenge the trial counsel's decision to request admission of the entire notepad, we do not address this issue when analyzing the lyrics' admissibility. See App.R. 12(A) (stating that an appellate court need not address issues not separately argued and pointed out in the record). Instead, the second assignment of error focuses on the trial court's decision to overrule defense counsel's objections raised after appellee cross-examined appellant on the lyrics pertaining to Duncan's death.
 {¶ 30} Appellant asserts that the lyrics are irrelevant. Evidence that is "not relevant is not admissible." Evid.R. 402. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action" more or less probable. Evid.R. 401. Here, appellant confirmed that the lyrics pertain to Duncan's death. As a result, the lyrics expound on appellant's mental state at the time he shot Duncan. Similarly, aspects of the lyrics rebut appellant's self-defense claim, e.g., "it wasn't hard to make sure your daughter was flipped," which refers to appellant shooting Duncan in the head. (State's Ex. 23.) Thus, we conclude that the lyrics are relevant.
 {¶ 31} Appellant further claims that the lyrics are inadmissible under Evid.R. 403(A) because they are inflammatory and highly prejudicial. Again, we disagree.
 {¶ 32} Although appellant's trial counsel objected to the lyrics' admissibility under Evid.R. 401, trial counsel did not object under Evid.R. 403 until after appellee had already questioned appellant about the lyrics. A defendant waives error stemming from the trial court's decision to admit evidence unless timely objecting and stating the specific basis for the objection if the basis is not apparent from the context. Evid.R. 103(A)(1). The objection must be "contemporaneous" to the alleged error. State v. Murphy (2001), 91 Ohio St.3d 516, 532. Pursuant to Evid.R. 103(A)(1) and Murphy, appellant waived the Evid.R. 403(A) issue, and we may not entertain the issue unless plain error exists. See State v. Barnes (2002), 94 Ohio St.3d 21, 27; Crim.R. 52(B). Under the plain error standard, we must first find error, "a deviation from a legal rule." Barnes, at 27. Moreover, the error must be obvious and must have impacted the defendant's "substantial rights" by affecting the outcome of the trial. Id.
 {¶ 33} Evidence is inadmissible under Evid.R. 403(A) if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Although appellant wrote the lyrics six months after the incident, he vividly describes the shooting and his reactions. Indeed, the lyrics are nothing more than appellant's own version of events surrounding the shooting, and, therefore, do not give rise to "danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Thus, the trial court did not commit plain error when overruling appellant's untimely Evid.R. 403(A) objection.
 {¶ 34} In addition, parts of the lyrics impeach appellant's testimony pursuant to Evid.R. 607. In particular, the lyrics, "I made sure [her] brains was missin" and "I sware [sic] to God I ain't sorry" impeach appellant's testimony that Duncan's death "was the last thing I wanted" and "I would have rather died than hurt her." (State's Ex. 23; Tr. 330.)
 {¶ 35} Based on the above, we conclude that the trial court properly admitted the lyrics into evidence. Consequently, we overrule appellant's second assignment of error.
 {¶ 36} In his third assignment of error, appellant contends that the evidence required the trial court to provide a voluntary manslaughter instruction even though appellant neither requested the instruction nor objected to its omission. We disagree.
 {¶ 37} Because appellant neither requested the voluntary manslaughter instruction nor objected to its omission, we review the issue under the plain error standard. See Barnes, at 27. A defendant is entitled to a voluntary manslaughter instruction "when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." State v. Shane (1992),63 Ohio St.3d 630, 632. Otherwise, the trial court is not required to give the voluntary manslaughter instruction. Id.
 {¶ 38} R.C. 2903.03 defines voluntary manslaughter and states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage * * * shall knowingly cause the death of another." Thus, the trial court is not required to provide a voluntary manslaughter instruction if the defendant did not act under the influence of sudden passion or in a sudden fit of rage. Shane, at 634; State v. Lee, Franklin App. No. 04AP-234, 2004-Ohio-6834, at ¶ 16. This determination contains a "subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." Shane, at 634.
 {¶ 39} Here, appellant testified that he was scared when he shot Duncan. However, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."State v. Mack (1998), 82 Ohio St.3d 198, 201. Appellant also claimed that he did not act out of rage, noting "I didn't have time to be like, oh, God, why did she do this?" and "I didn't have time to reflect anger." (Tr. 320, 392.)
 {¶ 40} Thus, appellant did not shoot Duncan while under the sudden influence of passion or in a sudden fit of rage, and the evidence did not warrant a voluntary manslaughter jury instruction. Therefore, the trial court's failure to provide the instruction did not constitute plain error, and we overrule appellant's third assignment of error.
 {¶ 41} In his fourth assignment of error, appellant claims that his trial counsel's performance constituted ineffective assistance of counsel. We disagree.
 {¶ 42} The United States Supreme Court established a two-prong test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 690. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. at 692.
 {¶ 43} Appellant first asserts that trial counsel was ineffective by failing to request a voluntary manslaughter instruction. We disagree.
 {¶ 44} In making an ineffective assistance of counsel claim, a defendant must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558. An attorney's decision not to request a voluntary manslaughter jury instruction is considered trial strategy. Lee, at ¶ 22. Here, the trial court and trial counsel discussed the propriety of a voluntary manslaughter instruction. Trial counsel agreed with the trial court that the evidence does not mandate such an instruction because appellant did not act with "adequate provocation." (Tr. 408.) This discussion confirms that trial counsel made a tactical decision not to request a voluntary manslaughter instruction.
 {¶ 45} In addition, we concluded above that the evidence does not warrant a voluntary manslaughter instruction. An attorney is not ineffective for failing to request a voluntary manslaughter instruction when the evidence at trial does not establish that the defendant acted under the influence of sudden passion or in a sudden fit of rage. Lee, at ¶ 22.
 {¶ 46} Next, appellant contends that trial counsel was ineffective in failing to preserve issues stemming from law enforcement's warrantless search. According to appellant, trial counsel failed to establish at the suppression hearing that law enforcement searched his bedroom when finding a notepad with lyrics. We reject appellant's contention because trial counsel properly specified in the motion to suppress that law enforcement found the lyrics in his bedroom, and we entertained the issue accordingly. See Xenia, at 218.
 {¶ 47} Appellant further asserts that trial counsel was ineffective by failing to raise Evid.R. 403(A) when objecting to the lyrics' admissibility. We reject this contention because we concluded above that the lyrics were admissible under Evid.R. 403(A).
 {¶ 48} Lastly, appellant argues in his brief that trial counsel failed to introduce medical records to confirm injuries that he sustained when Duncan shot him. However, appellant withdrew this claim at oral argument, noting that the medical records are in evidence.
 {¶ 49} Accordingly, we conclude that appellant's trial counsel did not provide ineffective assistance. Therefore, we overrule appellant's fourth assignment of error.
 {¶ 50} Appellant's fifth assignment of error concerns his convictions for murder and tampering with evidence. Appellant first maintains that his murder conviction is based on insufficient evidence. We disagree.
 {¶ 51} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, followingJackson v. Virginia (1979), 443 U.S. 307; State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. Jenks, at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks,
paragraph two of the syllabus; Yarbrough, at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim); State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 52} The jury convicted appellant of murder. R.C. 2903.02(A) defines murder and states, "[n]o person shall purposely cause the death of another." An individual acts purposely when he or she has a "specific intention to cause a certain result." R.C. 2901.22(A). Appellant asserts that the evidence does not establish a purposeful intent because he "feared for his life and was not thinking when the shot was fired." (Appellant's brief, 12.)
 {¶ 53} A jury may infer a purpose to cause death from a defendant inflicting a wound upon a person with a deadly weapon in a manner calculated to kill. State v. Stallings (2000), 89 Ohio St.3d 280, 291;State v. Wilson (Nov. 2, 2000), Franklin App. No. 99AP-1259. In making such an inference, the jury may consider the places where bullets entered the victim and the resulting wounds. State v. Strodes (1976),48 Ohio St.2d 113, 116, death penalty vacated (1978), 438 U.S. 911;Wilson.
 {¶ 54} Appellant killed Duncan with a firearm, a deadly weapon. See R.C. 2923.11(B)(1). Appellant did not shoot Duncan haphazardly. Rather, the bullet took a horizontal course through Duncan's skull and lodged into her brain, a vital organ. Such evidence allowed the jury to infer that appellant purposely killed Duncan.
 {¶ 55} We further reject appellant's contention that the evidence demonstrates the requisite intent for voluntary manslaughter, not murder. As recognized above, appellant did not shoot Duncan while under the influence of sudden passion or in a fit of rage, an element required for voluntary manslaughter in R.C. 2903.03.
 {¶ 56} Next, appellant claims that his murder conviction is against the manifest weight of the evidence. Again, we disagree.
 {¶ 57} In determining whether a verdict is against the manifest of the evidence, we sit as a "thirteenth juror." Thompkins, at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, at 387. Moreover, "it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible." State v. Brown,
Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10.
 {¶ 58} At trial, appellee's witnesses provided different versions about where appellant stood when he shot Duncan and how many shots he fired. The differences are inconsequential because the witnesses testified that appellant stood directly near or over Duncan. In addition, the witnesses unequivocally confirmed that appellant shot Duncan, and appellant admitted to shooting her. Therefore, appellant's murder conviction is not against the manifest weight of the evidence.
 {¶ 59} Because appellant's fifth assignment of error challenges the trial court's "judgment," we review the tampering with evidence conviction even though appellant does not elaborate on the conviction in his brief. (See appellant's brief, 10.) R.C. 2921.12(A) defines tampering with evidence and states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" The tampering with evidence statute applies even if no formal proceedings had commenced at the time the defendant destroyed the evidence. State v.Moore (Jan. 20, 1992), Scioto App. No. 91CA1966.
 {¶ 60} Here, appellant's involvement in the shooting triggered cause to know that law enforcement would investigate the incident and would be interested in the firearm. Nonetheless, appellant disposed of the firearm, and law enforcement never recovered it. Accordingly, we will not reverse the tampering with evidence conviction.
 {¶ 61} Appellant also does not specifically argue in his brief that the jury's decision to reject self-defense is either based on insufficient evidence or against the manifest weight of the evidence. Rather, appellant now contends that self-defense is specious given that Duncan was on the ground and unarmed when appellant shot her. Appellant correctly recognizes that self-defense requires that the defendant have a "bona fide" belief of imminent danger of death and that deadly force provided the only means of escape. State v. Thomas (1997),77 Ohio St.3d 323, 326. As appellant concedes, he was not in imminent danger when he shot Duncan. Thus, we will not disturb the jury's decision to reject self-defense.
 {¶ 62} Accordingly, we conclude that appellant's convictions are not based on insufficient evidence or against the manifest weight of the evidence. Therefore, we overrule appellant's fifth assignment of error.
 {¶ 63} In summary, we overrule appellant's first, second, third, fourth, and fifth assignments of error. Consequently, we affirm the Franklin County Court of Common Pleas' judgment.
Judgment affirmed.
Petree and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.