[Cite as *State v. Nelson*, 2016-Ohio-5344.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                           :        APPEAL NO. C-150650
                                                  TRIAL NO. B-1501410
    Plaintiff-Appellant,           :
                                                  *O P I N I O N.*
  vs.                                    :

LEONARD NELSON,                          :

    Defendant-Appellee.            :


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  August 12, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellee.

**DEWINE, Judge.**

{¶1}   This is an appeal by the state from a trial court decision granting a motion to suppress.  While undertaking a warrantless visit to a probationer's home, a probation officer peeked through a blanket hanging in the entrance of a bedroom belonging to another occupant of the home.  He immediately spotted a gun and a bag of marijuana.  The bedroom occupant was charged with drug trafficking and possession. He moved to suppress, arguing that the probation officer had no right to search his private bedroom.  The trial court granted the motion; we now reverse.  As a condition of his probation, the probationer consented to the search of his residence, including common areas of the home.  Even if the probationer's consent did not extend to the defendant's bedroom, concerns for officer safety justified the limited intrusion into the bedroom.

## I.   A Probation Visit Leads to Illegal Drugs and an Arrest

{¶2}   Leonard Nelson was charged with trafficking in marijuana and possession of cocaine after drugs were found in his bedroom.  The arrest occurred after three probation officers visited his home to check on his uncle, Shawn Nelson, who was also living there.   Two of the three probation officers testified at the hearing on the motion to suppress.

{¶3}   According to testimony presented at the hearing, Leonard and Shawn lived with Leonard's mother who rented the second and third floors of a two-family home on Clarewood Avenue in Cincinnati.  Shawn was on felony probation, having been convicted of carrying a concealed weapon.  After being placed on community control, Shawn signed the "Hamilton County Common Pleas Criminal General Rules for Probationers," which included an acknowledgment that "I am subject to search in

accordance with Ohio Revised Code section 2951.02. The search includes * * * the search of my person, place of residence."

{¶4} Not long after Shawn was placed on community control, his probation officer, Alex Boyd, attempted to visit the house. He needed to verify that Shawn was living there and was concerned because he had received an anonymous complaint that people were dealing crack cocaine from the house. He received no answer at the door, but did discover two shell casings—one on the sidewalk leading from the front of the house to the back and the other near the back door. Four days later Officer Boyd returned, and this time brought two other probation officers, Officers Mike Schad and Justin Miyagawa, with him. After the probation officers knocked and yelled for five minutes, Shawn answered the door.

{¶5} Shawn took the officers to a living room on the second floor where they encountered Shawn's mother and sister. Shawn told the officers that he slept in the living room and that there was no one else in the residence.

{¶6} Officer Schad testified that while the other officers were talking to Shawn and his companions, he heard movement that sounded like it was coming from above. According to Officer Schad this unknown noise alarmed him—"[d]ue to officer safety reasons, we would like to have everyone in a secure location, especially with a defendant who is out on felony probation for a gun." To investigate, the officer walked into the kitchen, found an open door to a stairwell, and proceeded up the steps to the third floor. At the top of the steps was an area that was described as "open -- like a community common room, like a living room with a couch and a coffee table." Behind that room was a bedroom that was separated from the common room by a blanket that was hanging in the entrance. As he was walking up the steps, Officer Schad shouted,

"Probation, is anyone up here?" Leonard identified himself, and Officer Schad ordered him to come out of the back bedroom and go downstairs.

{¶7} Officer Schad then poked his head into the third-floor bedroom to make sure no one else was there. He immediately spotted a gun and a small bag of marijuana on a table next to the bed. The probation officers handcuffed Leonard and detained him until Cincinnati Police arrived.

{¶8} Leonard filed a motion to suppress arguing that marijuana, cocaine and a digital scale found in the bedroom were the fruits of an unconstitutional search. After a hearing, the trial court granted Leonard's motion. The court stated that where a cotenant shares a residence with a probationer, a warrantless probation search of the residence must be limited to areas which the probationer is known to occupy or have joint control. The court found that Shawn did not have actual or apparent authority to consent to a search of the third floor. The court further found that no exigent circumstances—such as a concern for officer safety or the destruction of evidence—justified a search of the third floor. In addition, the court opined that the anonymous tip of illegal drug activity did not provide reasonable grounds to search the second floor, let alone the third floor.

## II. A Fourth Amendment Violation?

{¶9} In its sole assignment of error, the state contends the trial court erred when it granted Leonard's motion to suppress. It argues the probation officers had the right to search Shawn's residence and the common areas within because they had reasonable suspicion that he was not abiding by the law or the terms of probation. The state further contends that the concerns of officer safety justified the intrusion into the third-floor bedroom where the evidence of illegal activity was found.

## A. Shawn's Consent to Search

{¶10} As a condition of his probation, Shawn consented to a warrantless search of his person and residence. *See State v. Benton*, 82 Ohio St.3d 316, 321, 695 N.E.2d 757 (1998); *State v. McCain*, 154 Ohio App.3d 380, 2003-Ohio-4890, 797 N.E.2d 527, ¶ 1 (4th Dist.). R.C. 2951.02(A) authorizes a probation officer to search the probationer and his residence if the probation officer has "reasonable grounds to believe that the offender is not abiding by the law * * * or the conditions of the felony offender's nonresidential sanction." Here, the officers had reasonable grounds to believe that Shawn was not abiding by the law. They had received an anonymous tip that drug dealing was occurring at the house—a suggestion of illegal activity that was corroborated by the spent shell casings found outside.

{¶11} The question is how far Shawn's consent extended. Under R.C. 2951.02(A), a probation officer may search the probationer, his place of residence and "other real property * * * for which the offender has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess." This is consistent with the general principle that a third party can provide valid consent to a warrantless search if he "possesse[s] common authority over or other sufficient relationship to the premises" sought to be searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). To establish common authority, the state must demonstrate that Shawn had joint access to or control of the third floor. *See State v. Johnson*, 2014-Ohio-5400, 26 N.E.3d 243, ¶ 27 (4th Dist.). Because co-inhabitants have joint access or control for most purposes, it is reasonable to recognize each co-inhabitant has the right to permit inspection and that the others "have assumed the risk that one of their number might permit the common area to be searched." *Matlock* at fn. 7; *see Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d

684 (1969). But "where a cotenant who is not on probation shares a residence with a probationer, the warrantless probation search of the residence must be limited to the common areas the probationer is known to occupy or have joint control over." *State v. Norman*, 2014-Ohio-5084, 21 N.E.3d 1153, ¶ 41 (12th Dist.).

{¶12} Leonard argues that Shawn did not possess common authority over the third floor. Leonard's mother testified that ordinarily the door leading up to the third floor was locked, and that Leonard was the only one with access to the third floor. However, even if a cotenant does not have actual common authority over the searched area, a search does not violate the Fourth Amendment if the officers relied in good faith on that cotenant's apparent authority to consent. *Norman* at ¶ 38. Whether a person possessed apparent authority is an objective test that asks whether the facts available to the officer at the time would warrant a person of reasonable caution to believe the consenting party had the authority over the premises. *Illinois v. Rodriquez*, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

{¶13} Courts often have found that a probationer's actual or apparent authority to consent did not extend to separately locked areas of a home. For example in *Norman*, probationer officers removed a door by its hinges to access a basement that had been closed off with two locks. *Norman* at ¶ 39. The probationer claimed to have leased the basement out to other individuals and was able to produce a copy of the lease; the probationer denied having a key for the key-lock or knowing the combination for the keypad on the door; and an individual who identified himself as a basement tenant refused to consent to the search. *Id.* In these circumstances, the court found that a reasonable probation officer would not have relied upon the probationer's apparent authority to consent to the search. *Id.* Similarly in *Johnson,* the court found that a

6

probationer's consent to search did not extend to a separately padlocked bedroom belonging to another occupant of the home. *Johnson* at ¶ 28.

{¶14} Our case is different. Unlike the locked areas in *Johnson* and *Norman*, the stairway to the third floor was wide open. There was nothing to indicate that the third floor was not a common area of the house to which Shawn had joint access and control. The defense argues that Officer Schad could not have believed that Shawn had authority to consent to a search of the third floor because the air mattress where he apparently slept was located on the second floor. But the fact that Shawn may have slept on one floor, does not indicate that he did not have joint access to other open areas of the house. Further bolstering the probation officer's reasonable belief that Shawn had authority to consent to a search of the third floor is the fact that while he said he slept on the second floor, the officers did not observe any of his personal items on that floor. Thus, regardless of whether the third floor was an area over which Shawn had common authority, the facts presented to Officer Schad provided him with a good-faith belief that he did. Because it was reasonable for Officer Schad to assume that Shawn had joint access to open areas of the house, Officer Schad did not violate the Fourth Amendment when he proceeded up the stairs and into the living room on the third floor.

### B. The Third-Floor Bedroom

{¶15} Officer Schad's decision to peek into the third-floor bedroom, which was at least partially cordoned off by a blanket, presents a more difficult question. Ordinarily, "a co-tenant may not consent to the search of the private bedroom of another co-tenant which is neither jointly occupied nor jointly controlled." *Columbus v. Copp*, 64 Ohio App.3d 493, 498, 581 N.E.2d 1177 (10th Dist.1990).

{¶16} It is a fair question whether Shawn's apparent authority extended to the third-floor bedroom. There is a good argument that it did. Unlike the situations

in *Norman* and *Johnson*, the bedroom was not locked; indeed, only a hanging blanket separated it from the common room. Further, Officer Schad did not even know that a bedroom was behind the blanket until he looked in. But we need not decide whether Shawn's apparent authority extended to the bedroom because even if it did not, Officer Schad's brief intrusion was justified by concerns of officer safety.

{¶17} The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Where concerns of officer safety are present, the United States Supreme Court has measured reasonableness by balancing the need for the search against the invasion the search entails. *Maryland v. Buie*, 494 U.S. 325, 332, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, the court has found that the Fourth Amendment permits an officer to make a limited protective sweep incident to arrest. *Buie* at 337. Such a sweep must be based on "a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer in believing,' that the area swept harbor[s] an individual posing a danger to the officer or others." *Id.*, citing *Michigan v. Long*, 463 U.S. 1032, 1049-1050, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), quoting *Terry* at 21. Courts have also permitted a protective sweep even when no arrest takes place provided the officers entered the residence lawfully. *See, e.g., State v. Shaffer*, 8th Dist. Cuyahoga No. 93948, 2010-Ohio-1744, ¶ 18-19, 21. In *State v. Sutton*, 7th Dist. Mahoning No. 01-CA-181, 2002-Ohio-6901, for example, a protective sweep was permitted where officers entered an apartment with the resident's consent simply to ask questions, but then developed a reasonable suspicion that dangerous individuals might be hiding after the resident lied that no one else was in the apartment.

{¶18}     Under the circumstances confronted by Officer Schad, we find it eminently reasonable for him to stick his head into the bedroom.  Officer Schad had already discovered one individual in the bedroom.  The fact that Shawn had represented to the officers that no one else was in the house raised a legitimate suspicion that someone else might be lurking behind the blanket.  He also knew that Shawn was on probation for carrying a concealed weapon; that spent shell casings had been found outside of the house; and that an anonymous tip indicated crack cocaine was being sold at the house.  Out of concern for his safety and that of his fellow officers, Officer Schad acted reasonably and within the contours of the Fourth Amendment when he poked his head into the bedroom.

{¶19}     Once he looked inside of the bedroom, Officer Schad was entitled to seize the drugs and other evidence that were in plain view.  The plain view exception to the Fourth Amendment applies where, as here, (1) the initial intrusion was not constitutionally impermissible; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent.  *Coolidge v. New Hampshire*, 403 U.S. 443, 465-470, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978), paragraph one of the syllabus.

## III.    Conclusion

{¶20}     The state's sole assignment of error is sustained.  The judgment of the trial court granting Leonard's motion to suppress is reversed, and the cause is remanded for proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**CUNNINGHAM, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.