[Cite as *State v. Landrum*, 2018-Ohio-4582.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180030 |
| | | TRIAL NO. B-1702767 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TORIONO LANDRUM, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  November 14, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   After pleading no contest, Toriono Landrum was convicted of trafficking in cocaine and possession of cocaine.  Prior to entering his pleas, Landrum moved to suppress the evidence, alleging an illegal search and seizure of the cocaine found in his bedroom.  The cocaine was found by probation officers, who were searching the residence because probationer and cotenant Anthony Truitt had consented to a search of the common areas of the home as a condition of probation.  The trial court overruled Landrum's motion to suppress.

{¶2}   On appeal, Landrum challenges the trial court's decision to overrule his motion to suppress.  We find that the state failed to prove that Truitt possessed common authority over Landrum's bedroom, and therefore, the probationer's consent to search the residence did not extend to Landrum's bedroom.  Consequently, we reverse the trial court's ruling.

### The Motion to Suppress

{¶3}   The following facts were established during the hearing on the motion to suppress.  On May 9, 2017, at 3 p.m., Probation Officers Alex Boyd and Jeremy Nieheisel were driving through Walnut Hills, near a convenience store, a known drug-trafficking area.  Boyd observed Anthony Truitt, one of his probationers, in the parking lot leaning into a car.  Two months prior, Truitt had been convicted of trafficking in heroin for a transaction that had occurred at the same location.

{¶4}   When Truitt observed the officers, he ran to his own car and sped away.  Boyd followed him to his home.  As they pulled up, they saw Truitt enter the home via a side entrance.  Boyd repeatedly knocked on the side door, while Nieheisel stood at the side of the house to observe the front door.  Nieheisel heard the sound of the front door being locked.

2

{¶5} While Nieheisel was watching the front door, Boyd determined that Truitt's car was unlocked, and proceeded to search the vehicle. He found a bag of what appeared to be cocaine in the console. He called the police and his supervisor, and he requested the assistance of additional probation officers.

{¶6} After the additional officers arrived, Landrum and Truitt walked out of the front door. Truitt was searched, arrested, and placed into a locked car. Boyd informed Landrum that he was going to search the home, and Landrum asked him to limit the search to Truitt's bedroom in the basement. During a previous visit, Boyd was told that Truitt's bedroom was on the second floor, so Boyd suspected that Landrum was attempting to mislead him.

{¶7} Boyd first decided to clear the home to make certain no one else was there for officer safety. Boyd and two other probation officers cleared the home. While they were clearing the house, Boyd noticed that the jacket that Truitt had been wearing was in one of the upstairs bedrooms on the bed. That same bedroom had letters on the wall spelling out "Anthony." Boyd saw a second bedroom door with a locked padlock that had been forced open. The padlock was ripped off the wall, and the door was wide open.

{¶8} After Boyd cleared the house, the officers split up and began searching the entire home. Boyd explained that the officers searched, "Anything that was opened and he could have accessed while he was in the house for 20 minutes." Boyd suspected that Truitt had kicked in the bedroom door during the 20 minutes that he was in the house and had accessed the bedroom.

{¶9} Nieheisel started searching the padlocked bedroom with another probation officer. At the time, Nieheisel knew it was Landrum's bedroom based on Landrum's statements. During the search of Landrum's room, they found paperwork

with Truitt's name on it, and a sock in the corner of a shelf in the closet that contained crack cocaine and a digital scale. The drugs hidden in the sock formed the basis of the charges against Landrum.

{¶10} Tanisha Truitt ("Tanisha"), Landrum's fiancée, testified that she owns the home and shares the home with Landrum and her two children. Tanisha shared the padlocked bedroom with Landrum, her 11-year-old daughter slept in an upstairs bedroom, and Pruitt had recently moved his bedroom into the basement.

{¶11} When she left for work that morning, she did not lock the bedroom door. Landrum and she usually locked the door when they were both out of the bedroom. She also testified that when she left the house, there was no damage to the door.

{¶12} After hearing all of the testimony, the trial court overruled the motion. Landrum then pleaded no contest to the drug charges and was sentenced to two years of community control. In his sole assignment of error, Landrum challenges the overruling of his motion to suppress.

## *Standard of Review*

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts. *Id.*

## *Warrantless Probation Searches*

{¶14} Probation searches conducted pursuant to a condition of probation are constitutional provided that a "reasonable suspicion" exists that evidence of criminal activity can be found in a probationer's home. *State v. Burns*, 4th Dist. Highland No.

11CA14, 2012-Ohio-1529, ¶ 14, citing *United States v. Knights*, 534 U.S. 112, 120-121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

{¶15}  As a condition of his probation, Pruitt consented to a warrantless search of his person and residence.  *See State v. Benton*, 82 Ohio St.3d 316, 321, 695 N.E.2d 757 (1998); R.C. 2951.02.  In relevant part, R.C. 2951.02(A) states:

> [A]uthorized police officers * * * may search, with or without warrant, the place of residence of the offender * * * or other real property in which the offender has a right, title, or interest or for which the offender has the express or implied permission of a person with a right, title, or interest to use * * * if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the [offender's community control].

{¶16}  In this case, Landrum is not alleging that the probation officers did not have reasonable suspicion to search.   Rather, Landrum is arguing that the probationer did not have the authority to consent to the search of his bedroom.

{¶17}  A third party can consent to a warrantless search if he "possesse[s] common authority over or other sufficient relationship to the premises" sought to be searched.  *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).  In *Matlock*, the Court noted that:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property.  The authority which justifies the third party consent does not rest upon the law of property, with its

attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

(Citations omitted.) *Id.* at 171, fn. 7.

{¶18} The state has the burden of establishing common authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). To establish common authority, the state must demonstrate that Truitt had joint access to or control of Landrum's bedroom for most purposes. *See State v. Johnson*, 2014-Ohio-5400, 26 N.E.3d 243, ¶ 27 (4th Dist.). Appellate courts have held a probationer's status permits searches over areas the probationer is known to occupy or areas a probationer possesses common authority over. *State v. Nelson*, 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 11, citing *State v. Norman*, 2014-Ohio-5084, 21 N.E.3d 1153, ¶ 41 (12th Dist.). "[W]here a cotenant who is not on probation shares a residence with a probationer, the warrantless probation search of the residence must be limited to the common areas the probationer is known to occupy or have joint control over." *Norman* at ¶ 41.

{¶19} Generally, a probationer's authority to consent to a search does not extend to separately locked areas of the home or a cotenant's private bedroom. *Nelson* at ¶ 13; *Johnson* at ¶ 27; *Columbus v. Copp*, 64 Ohio App.3d 493, 497, 581 N.E.2d 1177 (10th Dist.1990). Thus, the sole issue in this case, is whether Truitt, as

an occupant of the residence, was authorized to consent to the search of Landrum's bedroom.

{¶20} Here, the state did not provide evidence that Truitt had joint access to or control over Landrum's bedroom. The state presented no evidence that Truitt had a key to the padlock or that Tanisha or Landrum had given him permission to access the bedroom. Moreover, Tanisha's testimony established that both Landrum and she had a key, and that they usually locked the door when neither of them was in the bedroom. Because the state failed to establish that Truitt had common authority over Landrum's bedroom, the state failed to show that Truitt had actual authority to consent to the search.

{¶21} However, the lack of actual authority to consent does not per se invalidate the search of an individual's private bedroom. *State v. Boland*, 12th Dist. Clermont Nos. CA2007-01-016 and CA2007-01-017, 2008-Ohio-353, ¶ 15. A warrantless search is valid if the police relied in good faith on a third person's apparent authority to consent. *See id.*, citing *Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793, 111 L.Ed.2d 148. The existence of apparent authority must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Rodriguez* at 188.

{¶22} The state's evidence established that Boyd believed he had the authority to search any room that Truitt had accessed. Boyd testified that he suspected Truitt had forced entry into the padlocked bedroom, which allowed him to search the bedroom. However, if Boyd's suspicions were correct, the fact that Truitt had to force his way into the bedroom suggested that Truitt did not have permission or authority to access the bedroom. Boyd's belief that Truitt had consented to a

7

search of every area of the home that he may have accessed was based on an erroneous belief of the law. *See State v. Chuey*, 9th Dist. Medina No. 2937-M, 2000 WL 487738, *6 (April 26, 2000). Accordingly, the facts available to the probation officers at the time of the search indicated that Truitt did not appear to have the authority to consent to the search of Landrum's bedroom.

{¶23} We therefore find that the trial court erred as a matter of law in determining that Truitt had actual or apparent authority to consent to a search of Landrum's bedroom, and that the court erred in overruling Landrum's motion to suppress. Accordingly, we sustain Landrum's sole assignment of error.

### Conclusion

{¶24} Having sustained Landrum's assignment of error, we reverse the judgment of the trial court and remand the cause with instructions to the trial court to enter judgement granting Landrum's motion to suppress, and for further proceedings.

Judgment reversed and cause remanded.

CUNNINGHAM, P.J., and MILLER, J., concur.

Please note:
    The court has recorded its own entry this date.