The STATE of Ohio, Appellee,

v.

ZAX–HARRIS, Appellant.

[Cite as *State v. Zax–Harris*, 166 Ohio App.3d 501, 2006-Ohio-1855.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21207.

Decided April 14, 2006.

---

502

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

Beth Goldstein Lewis Trimmer, for appellant.

BROGAN, Judge.

{¶ 1} Melissa Zax–Harris appeals from her conviction and sentence following a no-contest plea to one count of cocaine possession. In her sole assignment of error, Zax–Harris contends that the trial court erred in overruling a motion to suppress evidence.

{¶ 2} The facts of the present case, as set forth in the trial court's decision, are based on suppression-hearing testimony from Dayton police officer Brian Lewis, who was the only witness to testify. Those facts are as follows.

{¶ 3} "Officer Lewis testified that on June 25, 2004 that he, along with two other officers, responded to a call of a burglary in progress at 1834 Gondert Avenue, Dayton Ohio. They were told that the suspected burglar was a Robert Wagerman. Wagerman was an individual known to them because of prior arrests and criminal activity. The three officers arrived at the Gondert Avenue address within minutes of receiving the call and positioned themselves around the house. They knocked on the door but received no response. After about twenty minutes of knocking on the door, with no answer, Wagerman suddenly bolted out the back door. At the same time the Defendant Melissa Zax–Harris and another individual came out the front door. Officer Lewis, who was in front of the house quickly cuffed the Defendant and the other individual because he was unsure who they were or what was going on. He then assisted the other two officers in chasing and apprehending Wagerman. After Wagerman was secured, Officer Lewis returned to the front porch and determined that the two individuals were the Defendant Zax–Harris and another person identified as Cameron Brown. They told Lewis that Wagerman had held them hostage inside the house and would not let them answer the door. Concerned for their safety, Lewis and another officer made a quick protective sweep of the house to see if anyone else was inside. Lewis then uncuffed the Defendant and her friend and they went inside to take a statement from them concerning the alleged burglary. While taking the report, one of the officers observed in plain view what appeared to be crack cocaine inside a glass candlestick holder. The Defendant was eventually placed under arrest and while waiting to be placed in the cruiser for transport, made two incriminating statements. According to Officer Lewis, the statements were voluntary and not in response to any questions."

{¶ 4} After making the foregoing factual findings, the trial court declined to suppress the evidence of the crack cocaine and the incriminating statements made by Zax–Harris. In support of its ruling, the trial court reasoned as follows.

{¶ 5} "Defendant's motion to suppress is denied. In reviewing the totality of the circumstances it is clear that the officers were called to the Zax–Harris residence at her request due to an alleged burglary by Wagerman. They were

told by the Defendant that Wagerman was holding them hostage. At the time that the crack cocaine was observed, neither the Defendant nor her friend were being detained or were under arrest, and the officers were simply in the process of taking statements about the alleged burglary. At no time were the officers asked to leave.

{¶ 6} "Based on the evidence and the testimony the Court finds that the officers['] presence in the residence was with the Defendant's consent, that the crack cocaine was in plain view and the statements were voluntary. *State v. Harris* 2003 WL 21125918 (Ohio App. 2nd Dist., May 16, 2003)."

{¶ 7} On appeal, Zax–Harris contends that the record does not support a finding that she explicitly or implicitly consented to the officers' entry into her home. Based on the premise that the entry into her home was unlawful, she argues that the plain-view doctrine does not apply. In response, the state argues that exigent circumstances justified the initial "protective sweep" of the home, that Zax–Harris implicitly invited the officers to re-enter the home for investigative purposes, and that the plain-view doctrine does apply.

{¶ 8} Upon review, we find Zax–Harris's argument to be persuasive. When confronted with a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of the witnesses. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Accordingly, in reviewing a ruling on a motion to suppress, we give broad deference to the trial court's findings of fact if they are supported by competent, credible evidence. Id. Although we defer to the trial court's findings of fact, we must conduct a de novo review to apply those facts to the requirements of the Fourth Amendment. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911. In other words, we determine for ourselves, based on the trial court's properly supported findings of fact, whether the officers' entry into Zax–Harris's home violated the Fourth Amendment.

{¶ 9} Having reviewed a suppression-hearing transcript, we conclude that the trial court's factual findings are supported by Lewis's testimony. Those findings, however, gloss over the key issue in this case: whether Zax–Harris *consented* to the entry into her home that led to the discovery of crack cocaine. On this issue, the trial court observed that Lewis "went inside" with Zax–Harris and her companion, Cameron Brown, to obtain a statement about the burglary. Although that is true, the manner in which Lewis and Zax–Harris went inside is significant.

{¶ 10} Lewis testified that after Wagerman, the burglar, was arrested, Zax–Harris waited on the front porch with Brown while Lewis and another officer "check[ed] the rest of the residence." The purpose of this initial entry was to ensure that there were no more victims or suspects in the home. The officers

completed their protective sweep without incident and without finding anyone. They exited the home and returned to the front porch. Lewis testified that he then "brought" Zax–Harris inside the residence to talk to her. The purpose of this second entry into the home was to talk about her delay in answering the door and about Wagerman's holding her hostage. At that time, Zax–Harris was not a suspect in any criminal activity. Lewis simply wanted to investigate the possibility of bringing additional charges against Wagerman. Once inside the home, however, the officers observed crack cocaine and drug paraphernalia, a discovery that resulted in Zax–Harris's arrest.

{¶ 11} On cross-examination, the following exchange occurred about Lewis's bringing Zax–Harris into the house:

{¶ 12} Q: "If she didn't give you permission to enter the home, why would you bring her inside to question?

{¶ 13} A: "We weren't questioning her. We were talking to her about–well, we were talking to her about what took so long, what was the delay, and also her statements that her and Mr. Cameron had made that Mr. Wagerman had held them basically from letting him open the door. So we were investigating additional charges that we were looking at pursuing with Mr. Wagerman due to that.

{¶ 14} Q: "I understand that, but there was really nothing prohibiting you from doing this questioning or talking to those two on the porch, was there?

{¶ 15} A. "No."

{¶ 16} In our view, the trial court erred in finding that Zax–Harris consented to the entry into her home. In reaching this conclusion, we are not concerned about the initial entry, which was in the nature of a protective sweep. Although the state justifies the initial entry based on the officers' concern about additional victims or suspects being inside the home, the crack cocaine was not discovered during the initial entry. Therefore, the initial entry is irrelevant. The crucial issue is whether Zax–Harris consented to the officers' re-entry into her home to obtain a statement from her. On this issue, the state concedes that Zax–Harris did not expressly consent to the entry. It argues, however, that "Zax–Harris' action implied that she wanted them to enter her residence to investigate the crime against her and pursue charges against Wagerman." In support, the state reasons as follows.

{¶ 17} "By following the officers into her residence, engaging them in conversation and not telling them to leave, Zax–Harris had given the officers 'implied consent' to remain on the premises. See *State v. Harris*, 2nd Dist. No. 19479, 2003-Ohio-2519, 2003 WL 21125918 (co-defendant's action in opening door to hotel room and walking away after police knocked constituted implied consent to

entry). Zax–Harris could have simply stayed outside the apartment, shut the door, and refused the officers entrance to her home. *State v. Sutton*, 7th Dist. No. 01–CA–181, 2002-Ohio-6901, 2002 WL 31813086, at ¶ 18 (stating that the defendant could have stepped outside and shut the door to evince his intent not to allow the officers to enter his apartment). Indeed, as found by the trial court, the officers were called to the Zax–Harris residence at her request and at no time were they asked to leave."

{¶ 18} We find the foregoing argument to be unpersuasive. We decline to infer consent to enter from the fact that Zax–Harris followed the officers into the home and did not object to their entry. In our view, the *lack of an objection* to being led inside, after having been handcuffed to a railing, does not equate with *implied consent* to enter one's home. Under the circumstances of this case, it does not follow that Zax–Harris consented to the officers' entry into her home simply because she did not tell them to stop. Having been detained on the front porch, and having witnessed police perform a protective sweep prior to their "bringing" her inside, we cannot say that Zax–Harris's silent acquiescence to the entry demonstrated implied consent on her part.

{¶ 19} The two cases cited by the state do not persuade us otherwise. In *State v. Harris*, Montgomery App. No. 19479, 2003-Ohio-2519, 2003 WL 21125918, we held that a motel-room occupant implicitly consented to entry when she opened the door and stepped away in response to a police officer's knock. In *State v. Sutton*, Mahoning App. No. 01–CA–181, 2002-Ohio-6901, 2002 WL 31813086, the Seventh District held that an apartment occupant implicitly consented to entry when he stepped back and opened his apartment door all the way in response to a police officer's request to enter. The facts of the present case do not resemble those of *Harris* or *Sutton*. Here, Lewis did not request permission to enter Zax–Harris's home, and she did not express her consent through nonverbal behavior. Instead, Lewis brought her inside, and she failed to object. As explained above, we do not view Zax–Harris's failure to object to being brought inside her home as establishing implied consent on her part.

{¶ 20} When Lewis brought Zax–Harris inside her home, the burglar already had been arrested, and police already had conducted a protective sweep. Zax–Harris was not suspected of any criminal activity. She was the victim. If Lewis had wanted to go inside a private residence to take additional information about the crime from Zax–Harris, the Fourth Amendment obligated him to obtain her permission to enter. *Payton v. New York* (1980), 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (recognizing that "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed").

{¶ 21} Because Zax–Harris neither explicitly nor implicitly consented to the officers' entry, they were not lawfully present in her home. Therefore, the

plain-view doctrine does not apply. *State v. Austin* (Feb. 27, 1998), Greene App. No. 97 CA 54, 1998 WL 184608 ("For the plain view doctrine to apply, the officer must be lawfully present at the time of both the search and the seizure"). As a result, the trial court should have suppressed the evidence found inside her home. The trial court also should have suppressed statements that Zax–Harris made about her cocaine use while standing outside her house immediately following her arrest. We harbor no doubt that the statements, which were made right after police unlawfully entered her home, saw the cocaine, and arrested her for it, were a product of the Fourth Amendment violation and should have been suppressed as fruit of the poisonous tree under *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 22} Based on the reasoning set forth above, we sustain Zax–Harris's assignment of error, reverse the judgment of the Montgomery County Common Pleas Court, and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN, J., concurs.

GRADY, P.J., dissents.

GRADY, Presiding Judge, dissenting.

{¶ 23} "The Constitution only protects against unreasonable intrusions, whether it is a search or a seizure. Police conduct which is neither a search nor a seizure is not subject to review under the Fourth Amendment." Katz, Ohio Arrest, Search and Seizure (2002 Ed.), Section 1.5.

{¶ 24} I agree that when Officer Lewis brought defendant Zax–Harris inside her house, her failure to object to his entry can't be construed as her consent to the intrusion, either express or implied. However, her consent was required only if, absent her consent, the intrusion constituted a search or seizure and if it was unreasonable.

{¶ 25} Officer Lewis brought defendant back into her house in order to take a statement from her concerning the crime of which she was the victim. There is no basis in the record for concluding either that he suspected defendant of committing a crime or that his purpose was to locate and seize evidence that might implicate defendant in criminal activity. Therefore, the intrusion was not a search or a seizure.

{¶ 26} Once inside the house, Officer Lewis saw crack cocaine "in plain view." He was authorized to seize it and arrest defendant for the crime related to her possession of it, but only if his presence in the house was lawful. *Coolidge v. New*

*Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. The officer's presence there was lawful for Fourth Amendment purposes because it was not for purposes related to a search and because the intrusion that put him there—to take a victim's statement—was reasonable under the circumstances.

{¶ 27} I would affirm.