OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals a decision from the Clermont County Court of Common Pleas granting a motion to suppress in favor of defendant-appellees, Joseph and Robin Boland. We reverse the decision of the trial court.
 {¶ 2} On October 25, 2005, Agent John Pryor of the Miami Township Police Department was requested to accompany caseworkers from Clermont County Children's *Page 2 
Services to investigate a complaint of narcotics activity occurring at appellees' residence in Amelia. Appellees' live in the residence with their daughter, her boyfriend, Claude Godfrey, and Godfrey's two children. The residence contains a shared living space, kitchen, bathroom and three bedrooms. Two bedrooms are located on the ground floor and the third bedroom, occupied by appellees, is located upstairs.
 {¶ 3} Upon arrival at the residence, Agent Pryor and the caseworkers encountered Claude Godfrey in the front yard and told him why they were there. As they walked toward the house, Agent Pryor testified that he smelled the odor of burning marijuana coming from inside the residence.
 {¶ 4} Once inside, Agent Pryor testified that it was obvious from the odor that the occupants of the house had recently smoked marijuana. The agent required all of the occupants, including appellees, to gather into the living room. Agent Pryor explained to Godfrey that from his past experience the smell of burnt marijuana would be enough for him to obtain a search warrant. However, he said that it may take up to four hours to acquire the warrant, and that everyone could be detained while it was processed. Godfrey informed the agent that he would prefer to avoid the delay and agreed to consent to the search.
 {¶ 5} Agent Pryor testified that he personally advised appellee Robin Boland the same as he did Godfrey, that due to the smell of the marijuana he would be able to obtain a search warrant. Further, Agent Pryor testified that Robin Boland read the consent-to-search form and she asked him questions "about the fact that we were searching." Agent Pryor further stated that "when we went through that conversation, and she seemed very understanding of that." At no time did either appellee object to the search of the residence or their bedroom.
 {¶ 6} Godfrey signed the consent form in the presence of the residents, including appellees, and a search of the premises commenced. While searching the upstairs *Page 3 
bedroom, agents found cut straws, baggies, and a plate with a line of white powder, which tests later revealed to be methamphetamine and oxycodone. Also, upon opening a dresser drawer, the agents found a metal pipe, which contained cocaine residue.
 {¶ 7} Appellees were each indicted for aggravated possession of methamphetamine pursuant to R.C. 2925.11 (A) and possession of cocaine under the same section. A motion to suppress was filed on behalf of Robin Boland, challenging a consent search of their room. Thereafter, a motion to suppress was filed on behalf of Joseph Boland and the cases were consolidated for the purposes of the motion. Following a hearing, the trial court granted the motion in both cases. The state of Ohio timely appealed, asserting a single assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S [sic] MOTION TO SUPPRESS."
 {¶ 9} In its sole assignment of error, the state argues the trial court erred in granting appellees' motion for summary judgment because "Claude Godfrey exhibited apparent authority to consent to the search."
 Standard of Review {¶ 10} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998),127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Bryson (2001), 142 Ohio App.3d 397, 402. The reviewing court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. Id.
 Analysis {¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals against unreasonable governmental *Page 4 
searches and seizures. Warrantless searches are per se unreasonable unless one of the well-delineated exceptions applies. Katz v.United States (1967), 389 U.S. 347, 357, 88S.Ct. 507. One such exception to the warrant requirement is a search conducted pursuant to consent.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219, 93 S.Ct. 2041.
 {¶ 12} When the state seeks to establish consent for a warrantless search, it is not limited to proving that the defendant himself consented, but it may also show that the consent was obtained from a third party who possessed common authority or other sufficient relationship over the premises to be inspected. United States v.Matlock (1974), 415 U.S. 164, 171, 94 S.Ct. 988.
 {¶ 13} In Matlock, the court stated that: "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection of his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Id. at 171. The state has the burden of establishing common authority. Illinois v. Rodriguez (1990),497 U.S. 177, 181, 110 S.Ct. 2793.
 {¶ 14} Although a third party who is in joint possession of the premises may consent to a search, "ordinarily one co-tenant's separate personal bedroom is not deemed to be in the joint possession of other co-tenants in a house shared by unrelated persons." Columbus v.Copp (1990), 64 Ohio App.3d 493, 497.
 {¶ 15} However, lack of actual authority to consent does not per se invalidate the search of an individual's private bedroom. A warrantless entry is valid if the police reasonably, although incorrectly, believed that the person giving consent possessed common *Page 5 
authority over the premises. Rodriguez at 189. In Rodriguez, the Supreme Court noted that its holding did not automatically validate a search in which police officers accepted an invitation to enter the premises when the invitation was accompanied by an assertion that the person who consented to the search lived there. Id. at 188.
 {¶ 16} Even if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search. Id. at 188-189. Apparent authority is judged by an objective standard. Id. In Illinois v. Rodriguez, the United States Supreme Court held that a warrantless search based on consent was permissible if "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." Id. at 188.
 {¶ 17} The trial court based its opinion in this case on the Ninth District Court of Appeals decision in State v. Chuey (Apr. 26, 2000), Medina App. No. 2937-M. In Chuey, the defendant was a tenant in the home of Ms. Yergin. Id. at *1. The defendant had a private room in the home and free use of the common areas. Id. Ms. Yergin's son, George Carmichael, also lived in the home. While under juvenile probation, Carmichael tested positive for cocaine. Id. As a result, Medina County Sheriff's deputies sought the consent of Ms. Yergin to search her home. Id. Ms. Yergin went to the police station and signed a form consenting to a search of the home. Id. Prior to signing the form, Ms. Yergin informed deputies that in addition to herself and her son, other tenants also lived in the home. Id. Upon entering the home, police deputies performed a pat-down search of everyone present in the home, including the defendant, and required them to sit in the living room while the search was conducted. Id.
 {¶ 18} A narcotic detecting canine was brought in to assist in searching the home. Id. at *2. Upon searching the defendant's room, the dog alerted to a safe. Id. The deputy *Page 6 
asked the defendant if there was a key to the safe and the defendant informed the deputy that the safe was unlocked. Id. A search of the safe resulted in discovery of cocaine. Id. The Ninth District specifically noted that "Defendant did not verbally object to the search at anytime. However, due to where he was seated in the living room, Defendant was not in a position to see the deputies enter his room to conduct the search. Furthermore, the deputies did not inform him that they were searching his room." Id.
 {¶ 19} The Chuey court held that "the facts available to the deputies who performed the search were not sufficient to warrant a reasonable belief that Ms. Yergin had authority to consent to a search of Defendant's room." Id. at *5. "The deputies did not inquire into Defendant's status in the home, despite several opportunities to do so." Id. "The facts available to the deputies at the time of the search indicated that Defendant had a significant privacy interest in the place to be searched: he was a boarder in the home he was an adult, the place to be searched was his personal bedroom, the room contained belongings, the room was separated from the rest of the home, and there was no evidence that Ms. Yergin used or had mutual access to the room." The court further held that "[t]he deputies' belief that Ms. Yergin had authority to consent was based on an erroneous view of the law," and, as a result, their view that Yergin had apparent authority to consent to the search was not reasonable under the circumstances. Id. at *6.
 {¶ 20} In the case at bar, the trial court specifically found that: 1) Agent Pryor knew that Godfrey had a first floor bedroom and that appellees had a second floor bedroom. However, there was no separate outside entrance to appellees' upstairs bedroom, there was no kitchen or bathroom upstairs, and Pryor believed that Godfrey had the right to enter all portions of the house; 2) Godfrey did not have permission to enter appellees' bedroom, even to get something from the upstairs closet, without checking with them first; 3) at the time of the search, Pryor believed that Godfrey was the sole lessee of the property; 4) Pryor knew *Page 7 
that appellees lived in the house, but he never asked them for consent to search the property. However, appellees were present at the time, knew that Godfrey had consented to the search, and never objected to the agents searching their property.
 {¶ 21} As a result, the trial court held that the "situation was confusing, based on the number of people in the home, in determining everyone's relationship to everyone else and their status in the house. Based on this `confusing' situation, a reasonable person would have doubted Godfrey's authority to consent to the search of the private bedrooms. Therefore, because no further inquiry was made, the search was unlawful."
 {¶ 22} After a review of the record and the trial court's factual findings, we disagree with the trial court's ruling in this case because the trial court ignored facts in the record that distinguish this case from Chuey.
 {¶ 23} In this case, the trial court found that appellees never objected to the search. We recognize that the failure to resist a search, including silence, does not result in consent. Columbus v.Copp (1990), 64 Ohio App.3d 493, 498-499; see, also, State v.Zax-Harris, 166 Ohio App.3d 501, 2006-Ohio-1855, appeal not allowed, 110 Ohio St.3d 1467, 2006-Ohio-4288.
 {¶ 24} However, this case is not simply a matter of nonconsent by silence or failure to object. Appellees' conduct prior to the search would lead to a reasonable belief that Godfrey had apparent authority to consent to the search of the entire residence.
 {¶ 25} Prior to the search, all of the occupants, including appellees, were brought into the living room. Agent Pryor testified that everyone inside the house was very cooperative. While gathered in the living room, Agent Pryor personally explained to Robin Boland that he would be able to obtain a search warrant due to the odor of burned marijuana. In addition, Mrs. Boland read the consent form and asked Agent Pryor questions about the search. Further, appellees were present when Godfrey signed the consent form. *Page 8 
 {¶ 26} The trial court emphasized in its decision that since the situation was "confusing" a reasonable person would make further inquiry before conducting the search. However, Agent Pryor testified that what was "confusing" was "who was related to who and how they related to each other," not whether appellees resided at the house. Agent Pryor testified that he knew appellees were tenants at the residence, that he believed Godfrey could consent to the search of the entire house, and appellees were present when Godfrey signed the consent form. Evidence of appellees' conduct supports Agent Pryor's belief.
 {¶ 27} A review of the record demonstrates that appellees' conduct would warrant a reasonable belief that Godfrey had apparent authority to consent to the search of the entire premises, including appellees' bedroom. See State of Wisconsin v. St. Germaine
(Wis.App.2007), 740 N.W.2d 148 (Landlord had apparent authority to consent to search of house, including defendant's room in house; landlord consented to the search in presence of defendant and defendant did not voice any objection to the search).
 {¶ 28} Accordingly, appellant's sole assignment of error is sustained.
 {¶ 29} Judgment reversed and remanded for further proceedings consistent with this opinion.
 YOUNG, P.J., and BRESSLER, J., concur. *Page 1